WASHINGTON AIR COMPRESSOR
RENTAL CO., a corporation,
Appellant,

v.

NATIONAL UNION INSURANCE COMPANY, a corporation, and Firemen's Fund Insurance Company, a corporation, et al., and Martin & Gass, Inc., a corporation, Appellees.

MARTIN & GASS, INC., Appellant,

v.

NATIONAL UNION INSURANCE COMPANY, a corporation, and Firemen's Fund Insurance Company, a corporation, et al., and Washington Air Compressor Rental Co., a corporation, Appellees.

Nos. 2607, 2608.

Municipal Court of Appeals for the
District of Columbia.

Argued Sept. 12, 1960.

Decided Nov. 28, 1960.

John F. Mahoney, Jr., Washington, D. C., with whom Charles E. Pledger, Jr., Washington, D. C., was on the brief, for Washington Air Compressor Rental Co.

John L. Schroeder, Washington, D. C., for National Union Insurance Co. and Firemen's Fund Ins. Co.

Francis C. O'Brien for Martin & Gass, Inc. Allan C. Swingle, Washington, D. C., also entered an appearance for Martin & Gass, Inc.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

◼ These appeals stem from judgments of the Municipal Court awarding $427.50 to the National Union Insurance Company and $280 to the Firemen's Fund Insurance Company, these sums constituting reimbursement for payments made to their respective insureds, Mrs. Eleanor Becker and Mrs. Louise Longaker, on claims for property damage. The basis for liability was the finding of the trial court that appellants had so negligently conducted blasting operations in connection with the installation of a sewer line for the District of Columbia that the accompanying vibrations caused cracking in the plaster walls and ceilings of the Becker and Longaker homes. Appellants' first assigned error challenges this finding of negligence.

Mrs. Becker, the first witness called by appellees, testified that she had become concerned over the excavation being done in the vicinity of her home when, on September 18, 1958, appellants exploded a charge that shook the porch of her home. She reported the matter to the Department of Sanitary Engineering, the District agency apparently responsible for the sewer construction, and received a letter in reply from a Mr. Wright of that office advising her to contact appellant Martin & Gass, the general contractor on the job. She was then informed by Martin & Gass that appellant Washington Air Compressor was in charge of the blasting, and on the evening of September 25 or 26 she telephoned her complaint to Mr. Stecklein of that company. He rejected the idea that the detonations were producing cracks in the plaster of her home. Mrs. Becker related that intensive blasting continued daily with resulting damage to the plaster walls and ceilings of her home. Sometime later, a representative from Washington Air Compressor's insurance company visited her home and made an investigation of the damage allegedly caused by the blasting. At this point in the case a number of small cards marked with sketches of the locations of the cracks were introduced into evidence. In response to appellees' questioning, Mrs. Becker proceeded to describe the nature and location of the damage, with frequent references to the corresponding diagrams inscribed on the cards. Mrs. Longaker, the second and last witness for appellees, testified in like manner as to the intensity of the blasting and identified the damage which allegedly resulted therefrom.

Turning to the substance of appellants' defense, one Willie McFadden testified that he had been employed as a "blaster" by Washington Air Compressor for a period of thirteen years and that he had set and detonated the charges on this particular job. He explained the procedure he had normally followed, indicating that after placing the dynamite sticks in position and covering the immediate area with a mat, he would then withdraw to a point some twenty-five feet away from which he would explode the charge. He stated that he could not feel vibrations from the blast at that distance. He admitted being told of one complaint regarding the explosions but asserted that he had reduced the size of the charges as a consequence. Mr. Stecklein of Washington Air Compressor estimated that the houses in question were situated approximately 400 feet from the blasting site. He acknowledged having received a complaint from Mrs. Becker and stated that he neither investigated it nor instructed the

"blaster" to use less dynamite. He concluded that his contracting concern had followed the usual customs and usages of the trade while working on this job. Appellants next called a vibration engineer as an expert witness who stated that on October 15, 1958, he took seismographic readings of three test explosions set off by Washington Air Compressor. The readings were recorded in neighboring homes, at least one of which was the Longaker residence, and from the data thus compiled the expert reasoned that the blasting operations did not cause the damages complained of.

A review of the decisions dealing with property damage from concussion by blasting reveals two principal theories upon which liability has been predicated.[1] A majority of jurisdictions apply the doctrine of absolute liability to the offending party, while a number of other states, particularly in the east, require a showing of negligence. On a minor scale, recovery has also been upheld on a nuisance theory and at least one state permits the injured plaintiff to proceed in trespass.[2]

While this jurisdiction has not committed itself to the adoption of any of the aforementioned views, some indication of our general attitude with respect to highly dangerous instrumentalities was expressed in the case of Crump v. Browning,[3] wherein we commented that one who uses firearms or explosives is bound to exercise the highest degree of care. Appellants here charge that appellees did not establish a prima facie case of negligence for the reason that there was no evidence tending to show an absence of such care. We disagree.

As we have stated:

"  *  *  *  It is true that ordinarily negligence may not be presumed from the mere happening of an accident, but if the instrumentality which caused the injury was under the defendant's control and the accident was such that, in the usual course of events, it would not have occurred had proper care been exercised, then the burden is on the defendant to show that he exercised due care. If the defendant does not show that he exercised due care, the inference of negligence which arises from the circumstances is not destroyed. *  *  *"[4]

Since appellant Washington Air Compressor maintained control over the blasting and in view of the fact that damages probably would not have occurred had a high degree of care been strictly observed, this principle is appropriately invoked in the present case. We are left to determine whether Washington Air Compressor as a matter of law met the burden thereby imposed.

It must be said that a predominant part of appellants' defense was directed to refuting the contention that the blasting was the proximate cause of the damages suffered. Accordingly, appellants' expert testified that in his opinion the blasting was not the responsible factor and it appears that this was the approach followed in the questioning of Stecklein and McFadden. However, this stand was clearly at odds with the statements of appellees' witnesses and this situation left the trial court with a question of fact to decide. We cannot hold that it was error for the trial judge to credit appellees' evidence instead of accepting the opinion offered by the vibration engineer.

The only real evidence on the standard of care was Stecklein's own opinion that Washington Air Compressor's work methods conformed to the usual practices of the trade. Yet the trial court was not obliged to accept that statement as determinative

---

1. See annotation at 20 A.L.R.2d 1372 for a comprehensive discussion of this subject.

2. Ready-Mix Concrete Company v. Rape, 1958, 98 Ga.App. 503, 106 S.E.2d 429.

3. D.C.Mun.App.1955, 110 A.2d 695, 46 A.L.R.2d 1212.

4. Tan Top Cab Company v. Shiller, D.C. Mun.App.1956, 125 A.2d 68, 69, 70.

of the issue. It was still entitled to weigh that evidence of due care against the persuasiveness of the inference. The decision of the trial court answers which was the more compelling.

■■ We do not believe, however, that the judgment against appellant Martin & Gass can be allowed to stand. It is the general rule that an independent contractor is not ordinarily liable for the negligent acts of his subcontractor.[5] There is no indication that Martin & Gass selected an incompetent subcontractor, that it exerted exceptional control over the blastings, or that it was in any other manner culpable so as to bring it within an exception to the rule. It is undisputed that Martin & Gass only designated the work to be done; it then left Washington Air Compressor free to use the means and methods of accomplishing the assigned task. In addition, Washington Air Compressor supplied its own employees, the dynamite required, and in every other way appears from the record to have worked independently.

■ There is left remaining one further matter which requires our attention, namely, the proof of damages. · Concerning the damages to the Becker residence, appellees introduced into evidence a paid bill from a remodeling firm which, Mrs. Becker testified, made the necessary repairs. The bill amounted to $427.50 and the canceled check of National Union Insurance Company, made payable to Mrs. Becker for that sum, was also put into evidence. Moreover, Mrs. Becker stated that her home was in excellent condition prior to the blasting and introduced into evidence a number of personal checks for work which had been done on the house in the spring of 1958. Mrs. Longaker produced a paid bill for $280, the identical sum of which she declared she had received from Firemen's Fund Insurance Company. A notation on the bill concerned

indicated that she had signed the check over to the contractor who repaired her home. This evidence was plainly sufficient to establish the right of subrogation,[6] and under the holding in Wright v. Capital Transit Company, was ample to prove a prima facie case of damages.[7] Although the latter case involved the cost of repairs to a motor vehicle, we know of no reason why the same method should not be allowed in this case.

Judgment in No. 2607 is affirmed.

Judgment in No. 2608 is reversed.

ROVER, Chief Judge, sat during the argument of this case but died before it was decided.

---

5. 57 C.J.S. Master and Servant § 609.

6. Trinity Universal Insurance Co. v. Moore, D.C.Mun.App.1957, 134 A.2d 333.

7. D.C.Mun.App.1943, 35 A.2d 183.